**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

KENNETH SIEPKER,

      Defendant.

No. C01-3057-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SECTION 2255 RELIEF**

---

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Charges and Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *B. Sentence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   *A. Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . 9
   *B. Preliminary Matters* . . . . . . . . . . . . . . . . . . . . . . . . . 12
   *C. Actual Innocence* . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   *D. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . 17
      *1. Applicable standards* . . . . . . . . . . . . . . . . . . . . . . 17
      *2. Failure to move for severance* . . . . . . . . . . . . . . . . . . 20
      *3. Failure to request an "Old Chief" instruction* . . . . . . . . . . 23
      *4. Motion in Limine* . . . . . . . . . . . . . . . . . . . . . . . . 24
      *5. Failure to object to Count 3 as an illegal Bill Of Attainder* . . 26
      *6. Failure to request a buyer-seller instruction* . . . . . . . . . . 28
      *7. Failure to object to hearsay* . . . . . . . . . . . . . . . . . . 31
      *8. Stipulation that firearms were possessed "In Or Affecting Commerce"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
      *9. Failure to object to a constructive amendment* . . . . . . . . . . 34
      *10. Failure to assert an* **Apprendi** *claim* . . . . . . . . . . . . 35
   *E. Constitutional Issues* . . . . . . . . . . . . . . . . . . . . . . . . 39

        *1.     Admission of hearsay in violation of the Sixth Amendment* . . 39

        *2.     Insufficient evidence* . . . . . . . . . . . . . . . . . . . . . . . . . 45

   *F.  Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

## I. INTRODUCTION AND BACKGROUND

This matter comes before the court pursuant to defendant Kenneth Siepker's April 25, 2005, *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence by a Person in Federal Custody. (docket no. 142)("Motion"). Siepker claims that his trial counsel provided ineffective assistance of counsel in several ways: failing to move to sever trial on drug charges from trial on weapons charges; failing to seek a motion in limine to preclude hearsay testimony from non-coconspirators; failing to object to consecutive sentencing as an illegal Bill of Attainder; failing to object to a constructive amendment to the indictment; failing to request a buyer/seller instruction; failing to object to hearsay evidence in violation of the Sixth Amendment; failing to claim that there was insufficient evidence supporting the finding that possession of any firearm was "possessed or affected commerce"; and failing to raise an *Apprendi* claim based on judicial findings of drug quantity and purity. Siekper alleges that appellate counsel also provided ineffective assistance by failing to raise these issues on appeal. In addition to claiming that he received ineffective assistance of counsel at trial and on appeal, Siepker claims to be actually innocent of the charge of Felon or Drug Abuser in Possession of a Firearm. Further, Siepker's counsel, appointed after the filing of Siepker's *Pro Se* Motion, raises a challenge to Siepker's conviction on the drug conspiracy on the grounds that he did not

receive a "fair trial" pursuant to the Fourteenth Amendment because there was insufficient evidence to support his conviction. Siepker requests an evidentiary hearing on each of his claims. Siepker seeks to have the court vacate his convictions and sentence and grant him a new trial.

On July 11, 2005, Siepker filed a Motion to Proceed *In Forma Pauperis* and Motion to Appoint Counsel. (docket no. 145). Siepker filed a "*Pro* se Petition to Amend Motion Filed Pursuant to Title 28 U.S.C. § 2255," (docket no. 146), on August 7, 2006. On August 9, 2007, the court granted Siepker's Motion to Proceed *In Forma Pauperis* and his Motion to Appoint Counsel, while denying his Petition to Amend his Motion, without prejudice, on the grounds that counsel was appointed to represent him and that Siepker had not stated what grounds he wished to raise in his requested amendment. (docket no. 149). Additionally, the court ordered Siepker to file a brief by September 7, 2007 and ordered the Government to respond by October 1, 2007.

On September 7, 2007 Siepker filed a *pro se* Motion for Extension of Time to File a Brief. (docket no. 151). The court granted the motion and extended Siepker's deadline to file a brief to September 28, 2007, and ordered the government to respond by October 22, 2007. (docket no. 152). On September 24, 2007, by counsel, Siepker filed a Motion for Extension of Time to File what counsel referred to as a Supplemental Brief (counsel possibly construed Siepker's initial Motion and additional documentation to constitute an initial brief). (docket no. 153). On September 24, 2007, the court granted the Motion and ordered Siepker to file a brief by October 31, 2007 and ordered the government to respond by November 30, 2007. (docket no. 155). On October 30, 2007, Siepker filed a Second Motion for Extension of Time to Complete Investigation. (docket no. 157). On November 1, 2007 the court granted the motion and extended Siepker's deadline to November 16, 2007. (docket no. 158). The court extended the government's deadline to respond to

December 17, 2007. On November 15, 2007, Siepker moved for an additional extension of time. (docket no. 159). The court granted this motion and extended Siepker's deadline to January 15, 2008. (docket no. 160). On December 14, 2007, Siepker again moved for an extension of time. (docket no. 161). This motion was granted by the court on December 17, 2007 and Siepker's deadline to file a brief was extended to December 31, 2007, with the government ordered to respond by January 28, 2008. (docket no. 163). On December 31, 2007, by counsel, Siepker filed his "Brief in Support of His Motion to Amend/Correct his Motion to Vacate under 28 U.S.C. 2255". (docket no. 164). Siepker's counsel briefed the claims alleging ineffective assistance of counsel based on his trial counsel's failure to request a buyer-seller instruction and failure to request severance of the weapons charges from the drug charges. Additionally, counsel raised a new claim that Siepker's conviction violated his Fourteenth Amendment rights to a fair trial.

On January 25, 2008, the government filed an unresisted Motion for Extension of time to file their response. (docket no. 165). The court granted the government's motion on January 25, 2008 and extended the government's deadline to February 11, 2008. (docket no. 166). After seeking and receiving permission to file an overlength brief, the government filed its resistance to Siepker's motion on February 7, 2008, (docket no. 169), addressing each of the claims raised in Siepker's *pro se* Motion and in his counsel's brief. On August 21, 2008, without apparent assistance of appointed counsel, Siepker filed a *"Pro se* Motion for Leave to File Reply Brief Pro Se and Out of Time". (docket no.

170). The court granted this motion on August 25, 2008. (docket no. 171). Siepker filed "The Petitioner's §2255 Reply" (docket no. 172) *pro se* on August 25, 2008.

## A. *Charges and Trial*

On October 17, 2001, Kenneth Siepker was charged by one- count indictment (docket no. 1) with conspiracy to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. (docket no. 1). On October 26, 2001, Siepker appeared for arraignment in front of then Chief Magistrate Judge John A. Jarvey and pled not guilty. (docket no. 4). Siepker was temporarily detained pending a detention hearing. (docket no. 5). On October 30, 2001, after a detention hearing presided over by Judge Jarvey on October 29, 2001, Siepker was released pending trial. (docket no. 9). Siepker's conditions of release included, among other things, refraining from possessing a firearm, destructive device, or other dangerous weapons and refraining from use or unlawful possession of a narcotic drug or other controlled substance. (docket no. 10).

On November 28, 2001, the Grand Jury returned a superseding indictment. (docket no. 19). The superseding indictment re-alleged a conspiracy to distribute methamphetamine and added language claiming that Siepker had previously been convicted of a felony drug trafficking offense (Possession of Dangerous Drugs for Sale on November 21, 1995, in Maricopa County, Arizona), thereby making Siepker subject to an increased penalty pursuant to 21 U.S.C. § 851. The superseding indictment also added an additional count of possession of firearms and ammunition by a felon and an unlawful user of controlled substances in violation of 18 U.S.C. § 922(g)(1)&(3). On December 17, 2001, Siepker pleaded not guilty to all counts in the superseding indictment and was allowed to remain on pretrial release. (docket no. 22).

On January 3, 2002, the government filed a Petition for Revocation of Siepker's Pretrial Release based on allegations that Siepker had violated the terms of his release. The prosecution subsequently amended its Petition, alleging further violations of pretrial release. (docket nos. 25, 26, 29). On February 1, 2002, the court held a hearing on the government's Petition for Revocation of Pretrial Release and granted the government's Petition, ordering that Siepker be detained pending trial. (docket no. 33).

On February 13, 2002, the Grand Jury returned a Second Superseding Indictment against Siepker (docket no. 38). The Second Superseding indictment re-alleged counts one and two of the prior indictment, without change, and added a third count of Possession with the intent to distribute methamphetamine while on pretrial release, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 851, and 18 U.S.C. § 3147(1). Siepker was arraigned on the Second Superseding Indictment on March 5, 2002, and pleaded not guilty to all charges. (docket no. 41).

Siepker filed a Motion to Suppress on April 16, 2002 (docket no. 55). In his Motion to Suppress, Siepker sought suppression of all items seized from his person and clothing by officers on January 29, 2002. The government resisted Siepker's Motion to Suppress on April 24, 2002. (docket no. 63). The court, presided over by the Honorable United States Magistrate Judge Paul A. Zoss, held a hearing on Siepker's Motion to Suppress on May 9, 2002. (docket no. 66). On June 6, 2002, the court entered an order denying Siepker's Motion to Suppress. (docket no. 70).

Siepker proceeded to trial before a jury on July 8, 2002, presided over by the Honorable Karen E. Schreier. Prior to trial, the parties stipulated that all the firearms and ammunition listed in Count III of the indictment "were not manufactured in the state of Iowa." (docket no. 92). The parties filed a subsequent stipulation agreeing that "These firearms traveled in interstate commerce at some point prior to the time they were found

in the state of Iowa in October 2001" and that the firearms "are fully functional and capable of being fired." (docket no. 93). On July 12, 2002, the jury returned a verdict, finding Siepker guilty on all counts. On July 18, 2002, Siepker filed an Application for Additional Time to File Post-Trial Motions. (docket no. 103). On July 25, 2002, the court granted Siepker's Application and ordered Siepker to file post-trial motions on or before August 2, 2002. (docket no. 112).

On August 2, 2002, Siepker filed a Motion for Judgment of Acquittal and a separate Motion for New Trial. (docket nos. 113 & 114). In his motions, Siepker claimed that the jury had been presented with insufficient evidence to sustain a conviction on any of the three counts. Siepker claimed that there was no evidence that there had been any agreement, express or implied, between Siepker or any other individual. Siepker further claimed that the government did not produce any substantial evidence that Siepker possessed any firearms. Siepker additionally claimed that the government had not produced any evidence that Siepker intended to distribute any portion of the methamphetamine. Therefore, Siepker requested that the court enter a judgment of acquittal on all three counts, or in the alternative, grant Siepker a new trial on all three counts. The government filed its response (docket no. 116) on August 5, 2002, asserting that the government had presented sufficient evidence on all three counts and, therefore, the jury's verdict should be upheld. By order dated September 11, 2002, the court denied Siepker's Motion for Judgment of Acquittal and Motion for New Trial. (docket no. 118).

### B. Sentence

Siepker was scheduled to be sentenced on October 4, 2002. The government filed a Sentencing Memorandum on October 1, 2002 (docket no. 120). Siepker did not file a Sentencing Memorandum prior to sentencing. Siepker's sentencing hearing was continued

to and did occur on, October 11, 2002, presided over by the Honorable Karen E. Schreier, whom had also presided over the trial in this matter. Prior to sentencing, Siepker objected to the PSIR on the basis that the drug quantity was too high, claimed that there should be no enhancement for his role in the offense, and asserted that there should be no enhancement for using a minor in the commission of the offense. The court addressed each of these issues separately, as follows, at the sentencing hearing.

The court determined that the trial testimony supported a finding of 15.12 kilograms of methamphetamine. (Sentencing Tr. 19). The court found, however, that a reduced quantity testified to by one of the witnesses at grand jury was more appropriate on the basis that grand jury testimony regarding drug quantity is generally more credible. (Sentencing Tr. 20). The court also determined that another witness's previous statements to FBI agents regarding drug quantities were more credible than the amounts the witness testified to at trial. (Sentencing Tr. 21). After this adjustment and an additional adjustment for an error, the total drug quantity for Siepker was determined to be 14.815 kilograms. (Sentencing Tr. 25). This amount converted to a marijuana equivalent of 29,620 kilograms. (Sentencing Tr. 27). This drug quantity placed the base offense level for Siepker at 36 for counts 1 and 3 of the indictment, rather than 38 as stated in the PSIR. (Sentencing Tr. 27). At sentencing, Siepker also objected to a two level enhancement for his role as a leader or organizer in the conspiracy. The court found that there was ample evidence presented at trial to find that Siepker had in fact been a leader and an organizer and therefore granted the request for a two-level enhancement. (Sentencing Tr. 40-41). Finally, Siepker objected to a two-level enhancement for using a minor to further the conspiracy. The court found that the testimony that formed the basis for this enhancement was provided at trial by a witness the court found to lack credibility. (Sentencing Tr. 43). The court, therefore, denied the request for a two level enhancement for use of a minor

to further the conspiracy and found that the adjusted offense level for counts 1 and 3 of the indictment was 41. (level 36 as a base offense level, with a two-level enhancement for role in the offense and a three-level enhancement for his post-indictment conduct). (Sentencing Tr. 45-48). The court sentenced Siepker at the bottom of the guideline range of 360 months to life, but added on twelve months as additional punishment for Siepker's behavior while he was on pre-trial release. (Sentencing Tr. 63). Upon the conclusion of the sentencing hearing, the court found that Siepker's base offense level was 41 and that he had 4 criminal history points. Siepker was sentenced to a total term of 372 months. He received 336 months on count 1 (drug conspiracy) of the second superseding indictment; 30 months on count 2 (possession of firearms) of the second superseding indictment to be served concurrently with count 1; and 36 months on count 3 (possession with intent) of the second superseding indictment to be served consecutively to all other counts. (Sentencing Tr. 64).

On October 21, 2002, Siepker filed his Notice of Appeal to the Eighth Circuit Court of Appeals alleging that the government had presented insufficient evidence to establish that he had conspired to distribute methamphetamine. (docket no. 124). On January 7, 2004, the Eighth Circuit Court of Appeals affirmed the judgment of the District Court finding that the government had "presented ample testimonial and physical evidence" against Siepker. (docket no. 138). Although Siepker filed a Petition for Writ of Certiorari to the Supreme Court on March 4, 2004, that petition was denied on April 30, 2004.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

Turning to the legal analysis of Siepker's claims, in light of the evidence in the record, the court notes, first, that 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review

of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's

ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of Siepker's claims for § 2255 relief.

### B. Preliminary Matters

Siepker requested an evidentiary hearing on his Motion. "A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted); *See* 28 U.S.C. §2255. In this case, the court concludes that no evidentiary hearing is required on any issue, because the record conclusively shows that Siepker's allegations, if accepted as true, would not entitle him to relief because he can demonstrate no prejudice and further that Siepker's allegations cannot be accepted as true because they are contradicted by the record.

Some of Siepker's claims appear to be procedurally defaulted, in that they were not raised at trial or on direct appeal. *See Ramey v. United States*, 8 F.3d 1313, 1314 ("Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged

errors were fundamental defects resulting in a complete miscarriage of justice." (internal citations omitted)); *accord Johnson v. United States*, 278 F.3d 839, 844 ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'" (quoting *Bousley*, 523 U.S. at 622, with citations omitted)). However, as noted above, the "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht*, 403 F.3d at 545. The court will assume, without deciding, that Siepker can show "cause and prejudice" to overcome defaulted claims, *inter alia*, as the result of "ineffective assistance" of trial or appellate counsel. Therefore, the court will pass on to the merits of Siepker's claims for § 2255 relief.

### C. Actual Innocence

Siepker alleges that he was actually innocent of the charge of being a controlled substance abuser and felon in possession of firearms and ammunition. Siepker claims that he did not possess the firearms or ammunition, as alleged in the indictment because at all times relevant to the indictment, Siepker alleges that the firearms and ammunition were in the physical possession and control of his brother, Dean Siepker.

The court initially notes that there is a difference between a "gateway claim" and a "freestanding claim" of actual innocence. *See House v. Bell*, 547 U.S. 518, 126 S. Ct. 2064,165 L.Ed.2d 1 (2006). The gateway claim of actual innocence, as previously recognized by the Supreme Court, exists when a petitioner attempts to avoid a procedural bar that would otherwise preclude him or her from bringing other claims. *See Id.,* at 536-537; *Bousley*, 523 U.S. at 623. The claim of actual innocence serves as a gateway for the petitioner to argue his or her other claims before the Habeas court. *House*, 547 U.S. at 536-537, 126 S. Ct. at 2076-77. Thus, it is a complement to the "cause and prejudice"

standard that permits a petitioner to raise an otherwise procedurally barred claim. *See McNeal*, 249 F.3d at 749 ("A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence.").

A freestanding claim of actual innocence, on the other hand, is a petitioner's attempt to prove his or her innocence outright. *See House*, 547 U.S. at 554-55, 126 S. Ct. at 2086-87; *see also Herrera v.Collins*, 506 U.S. 390, 417, 113 S. Ct. 853 (1993)(recognizing the possibility of such a claim). A successful freestanding claim of actual innocence would render any procedural bar irrelevant.

A freestanding claim of actual innocence, however, has never been explicitly recognized by the Supreme Court. *See House*, 547 U.S. at 555 , 126 S. Ct. at 2087; *Baker v. Yates*, 2007 WL 2156072. The Supreme Court concluded, in *House*, "that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *Id*. The Court further established that the standard for any freestanding innocence claim would be "'extraordinarily high.'" *Id*. (quoting *Herrera*, 506 U.S. at 417). While the Court did not further explain what an "'extraordinarily high'" standard would consist of, the Court did indicate that this standard would be higher than the standard for a successful gateway innocence claim. *Id*. ("The sequence of the Court's decisions in *Herrera* and *Schlup*- first leaving unresolved the status of freestanding claims and then establishing the gateway standard- implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*.").

While the standard for a gateway innocence claim is less demanding than its counterpart, it is still very strict. A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*.

at 536-537, 126 U.S. Ct. at 2076-77. Thus, first a petitioner must present "'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence- that was not presented at trial.'" *Id*. at 537, 126 S. Ct. at 2077 (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L.E.2d 808 (1995)). Armed with such evidence a petitioner may then attempt to meet the "demanding" standard that "permits review only in the 'extraordinary' case." *Id*. at 537 (quoting *Schlup*, 513 U.S. at 327). In this case, the court will assume the defendant has made both claims.

Siepker has not claimed that there is any new evidence to be presented as to the firearm charge. *See House*, at 547 U.S. 537, 126 S. Ct. 2077 (requiring the petitioner to present new evidence). The standard for a successful gateway claim of actual innocence requires "new reliable evidence…that was not presented at *trial*", *Schlup*, 513 U.S. at 324 (emphasis added). In this case, Siepker presents no new evidence in support of his claim of actual innocence that was not presented at his trial. Siepker's argument is that he was not in physical possession of the firearms in question. Siepker's brother, Dean Siepker, testified that shortly after Kenneth Siepker was convicted of a felony in Arizona, and while Kenneth Siepker was still incarcerated, the firearms listed in the indictment were delivered by Kenneth Siepker's then wife, Bobbi Williams, to Dean's home and remained there until they were requested by law enforcement officers sometime in December of 2001. (Trial Tr. Vol. 576-587). Siepker's claim of actual innocence is based on the fact that his brother physically possessed the firearms and he did not; however, this is evidence that was presented to and considered by the jury. The lack of any new evidence alone is enough to deny Siepker's claim when characterized as an actual innocence claim. *See House*, U.S. at, 126 S. Ct. at 2077.

Second, the existing record supports Siepker's conviction and contradicts his argument. Siepker was charged with possessing firearms and ammunition while being an unlawful controlled substance abuser and having been previously convicted of one or more offenses punishable by more than one year. Siepker claims that he never possessed the firearms or ammunition. While Dean Siepker testified at trial that Bobbi Williams delivered the guns to him shortly after his brother was convicted and incarcerated in Arizona, he also testified that within months of receiving the guns, Kenneth Siepker contacted him and told him that someone had bought one of the guns and was going to come over to pick it up. (Trial Tr. 580-581). The man who came to Dean Siepker's house to pick up the gun did not provide any money to Dean Siepker; he simply arrived and took the gun. (Trial Tr. 583-584). Dean Siepker testified that he considered the firearms to be "Kenny's" guns. (Trial Tr. 580). Possession of a firearm may be "actual or constructive and need not be exclusive." *United States v. Saddler,* 538 F.3d 879, (8th Cir. 2008) *citing to, United States v. Williams*, 512 F.3d 1040, 1044 (8th Cir. 2008),*cert. denied,*128 S.Ct. 2918 (2008). "Proof of constructive possession requires evidence that a defendant knowingly has the power and intention to exercise control over the firearm…" *Id.* Reasonable jurors could have found that, by directing the sale and delivery of one of the firearms in Dean Siepker's physical possession, Kenneth Siepker exercised control over the firearms. Based on the existing record, reasonable jurors could have found defendant Siepker guilty. Therefore, the defendant has not made a successful showing to establish a "gateway" claim of actual innocence. *See Bousley*, 523 U.S. at 623-23 (noting "that 'actual innocence' means factual innocence, not mere legal insufficiency" (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992)). As such, Siepker has also failed to meet the higher standard required for a successful freestanding claim of actual innocence.

### D.  Ineffective Assistance Of Counsel

#### 1.    Applicable standards

Siepker asserts that his trial counsel provided him with ineffective assistance of counsel in the following ways:  failing to move to sever trial on drug charges from trial on weapons charges; failing to seek a motion in limine to preclude hearsay testimony from non-coconspirators; failing to object to consecutive sentencing as an illegal Bill of Attainder; failing to object to a constructive amendment to the indictment; failing to request a buyer/seller instruction; failing to object to hearsay evidence in violation of the Sixth Amendment; claims that there was insufficient evidence supporting the finding that possession of any firearm was "possessed or affected commerce" and failing to raise an *Apprendi* claim based on judicial findings of drug quantity and purity.  Siekper also alleges that appellate counsel provided ineffective assistance by failing to raise these issues on appeal. Further, Siepker's counsel, appointed after the filing of Siepker's *Pro Se* Motion, raises a challenge to Siepker's conviction on the drug conspiracy on the grounds that he did not receive a "fair trial".

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. AMEND. VI.  Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008).  By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States.  28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United

States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not Siepker is entitled to relief on his § 2255 motion turns on whether or not he can satisfy the standards applicable to his "ineffective assistance" claims.

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'"

*Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997).

### 2.	*Failure to move for severance*

Siepker claims that his trial counsel was ineffective for failing to sever trial on the drug charges from trial on the weapon charges appearing in the indictment. To obtain relief for his trial counsel's failure to request separate trials on the drug charges and the weapon charges, Siepker must show that such failure "rendered the trial fundamentally unfair." *Hollins v. Department of Corrections*, 969 F.2d 606, 608 (8th Cir. 1992).

Rule 8(a) of the Federal Rules of Criminal Procedure provides that "the indictment or information may charge a defendant in separate counts with two or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." *See United States v. Civella*, 666 F.2d 1122, 1128 8th Cir. 1981). Broad interpretation of the joinder rule is favored "to encourage the interest of more efficient administration of criminal trials." *United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002) (citing *United States v. Rodgers*, 732 F.2d 625, 629 (8th Cir. 1984)) see *Miller v. United States*, 410 F.2d 1290, 1293 (8th Cir. 1969) ( citing *Haggard v. United States*, 369 F.2d 968, 973, *cert denied*, *Alley v. United States*, 386 U.S. 1023(1966)). This should, however, in no way, "detract from the rights of individuals to avoid prejudicial joinder." *Miller*, at 1293. Offenses are properly joined when the evidence occurred over a short period of time and overlapped. *See United States v. Running Horse*, 175 F.3d 635, 637 (8th Cir. 1999); *United States v. Valentine*, 984 F.2d 906, 909 (8th Cir. 1993) ( citing *United States v. Shearer*, 606 F.2d 819, 820 (8th Cir. 1979)); see *Johnson v. United States*, 356 F.2d 680, 682 (8th Cir.) (the evidence should overlap for proper joinder), *cert denied*, 385 U.S. 857, 87 S. Ct. 105, 17 L.Ed.2d 84 (1966); *United States v. King*, 567 F.2d 785, 788 (8th Cir. 1977). In cases of proper joinder, 'evidence from each offense should be admissible in a separate trial for the other

offenses.' *United States v. Dennis*, 625 F.2d 782, 802 (8th Cir. 1980); *United States v. Bowman*, 602 F.2d 160, 163 (8th Cir. 1979). . When the indictment invites joint proof, joinder is prima facie valid. *See Schaefer v. United States*, 362 U.S. 511 (1960). More specificially, when narcotics-related charges and weapons-related charges "are connected temporally or logically[,] they are reasonably joined." *United States v. Boyd*, 180 F.3d 967, 982 (8th Cir. 1999). Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of the joinder is determined solely by the allegations in the indictment. *United States v. Massa*, 740 F.2d 629 (8th Cir. 1984), *overruling on other grounds recog., United States v. Gardner,* 447 F.3d 558, 569 (8th Cir. 2006). Also, where evidence of the 'other incident' would properly have been admissible under Fed. R. Evid. 404(b), a defendant cannot complain of prejudice in defending against both counts in one trial. *United States v. Jordan*, 602 F.2d 171, 173 (8th Cir. 1979).

The indictment in this case charged Siepker with being a member of a conspiracy to distribute methamphetamine, possessing methamphetamine with intent to distribute while on pre-trial release, and possession of firearms and ammunition by an illegal controlled substance abuser and a convicted felon. The indictment alleges that the drug conspiracy occurred between 1999 and 2001, that the possession with intent occurred on or about January 29, 2001, and that the illegal possession of the firearms occurred between July 1998 and September 2001. Thus, the indictment alleged that the time frame of all three counts was overlapping, meeting the requirement that offenses, for purposes of joinder, be temporally related. *See Boyd,* 180 F.3d at 982.

Further, the charges were "reasonably related." The evidence presented at trial on any of the counts would have overlapped the evidence presented at trial in any of the other counts. *See Running Horse*, 175 F.3d at 637. Siepker was charged with violating 18 U.S.C. §922(g) not only on the basis that he was a felon in possession of a firearm, but

also on the basis of being an illegal controlled substance abuser in possession of a firearm. Much of the evidence relevant to the drug charges would have been admissible in a trial on the firearms charges as related to proof of Siekper's status as an illegal controlled substance abuser. The testimony supporting the claim that Siepker was an illegal controlled substance abuser when he possessed the firearms would have been the same evidence and would have been provided by the same witnesses as that produced to prove that he was a member of a drug conspiracy that occurred contemporaneously to his firearm possession. *Id.* It would have been reasonable for Siekper's trial counsel to determine that a motion to sever the firearms count from trial on the drug charges would not have been successful in this case. Trial counsel's failure to seek severance in this case did not therefore fall "below an objective standard of reasonableness". *Wiggins*, 539 U.S. at 522.

Nor can Siepker complain that joinder was improper because it unnecessarily informed the jurors of his prior conviction. The evidence relating to Siepker's prior felony conviction would  have been admissible in a trial involving the alleged drug conspiracy pursuant to 404(b). Rule 404(b) of the Federal Rules of Evidence provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order ot show action in conformity therewith," but may be admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See Jordan*, 602 F.2d  at 173. The prior drug conviction was very similar to the crimes charged and occurred within seven years of the current charge; therefore, it is likely that the evidence related to Siepker's prior conviction would have been admitted during the trial on his drug charges. *See U.S. v. Cole*, 537 F.3d 923, 928 (8th Cir, 2008); *United States v. Marquez*, 462 F.3d 826, 830 (8th Cir. 2006). Thus, Siepker can claim no prejudice from the fact that the jury heard evidence relating to his prior drug conviction. *United States v. Jordan*, at 173.

Further, the court provided a limiting instruction advising the jurors that they could not use evidence relating to Siepker's prior drug conviction to decide whether he carried out the acts involved in the crime charged in the indictment in this case. (Jury Instr. No. 8). It is presumed that juries follow instructions. *United States v. Chipps,* 410 F.3d 438, 449 (8th Cir. 2005). Siepker is therefore unable to demonstrate that a reasonable jury would have reached a different result in a separate trial, as opposed to a joint trial. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006)("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."). Furthermore, there was overwhelming evidence of Siepker's guilt on the drug charges making it unlikely that the evidence regarding firearms unduly influenced the jury.

Siepker's claim that his trial counsel was ineffective for failing to move for severance and that is appellate counsel was ineffective for failing to raise this claim both fail because trial counsel was not deficient in failing to seek severance and because Siepker cannot establish that he was prejudiced by a joint trial. *See Wiggins,* 539 U.S. at 522.

### 3.    *Failure to request an "*Old Chief*" instruction*

Siepker claims that his trial counsel provided ineffective assistance of counsel by failing to request an "*Old Chief*" instruction prior to trial when Siepker had asked him to do so. *Old Chief* held that where the defendant's status as a felon is an element of the crime charged, and a defendant offers to stipulate to his prior record for purpose of establishing a prior felony under 18 U.S.C. § 922(g), the government must accept this stipulation and may not present further evidence of defendant's prior criminal history before the jury. *Old Chief v. United States*, 519 U.S. 172, 178 (1997). The Supreme Court explained, however, that the general rule is that "the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not

23

stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id*. at 186-87, 117 S. Ct. 644; *see also*, *Id*. at 189, 117 S. Ct. 644. *Old Chief* eliminates the possibility that a defendant can escape the introduction of past crimes under Rule 404(b) by stipulating to the element of the crime at issue. However, even if an *Old Chief* stipulation has been entered into by the parties, if the evidence goes to an issue other than character, such as intent, motive, knowledge, etc., the court then asks whether the Federal Rule of Evidence 402's relevancy requirement is met and whether the probative value of the evidence is substantially outweighed by the prejudicial effect under Federal Rule of Evidence 403, to determine whether the evidence would be admitted despite the stipulation. *United States v. Hill*, 249 F.3d 707, 710 (8th Cir. 2001). The underlying facts of Siepker's prior conviction, that he previously possessed methamphetamine with intent to deliver, was admissible to show Siepker's knowledge and intent pursuant to Federal Rule of Criminal Procedure 404(b). *See United States v. Adams*, 401 F.3d 886, 899 (8th Cir. 2005) (noting that evidence of participation in other drug transactions is relevant to show knowledge and intent in the charged offense). Siepker's prior drug conviction would have been admissible, despite any stipulation, therefore, Siepker's claim that either his trial or appellate counsel was ineffective for failing to request an "*Old Chief*" stipulation was objectively reasonable. *See Wiggins,* at 522.

### 4.    *Motion in Limine*

Siepker also claims that his trial counsel was ineffective for failing to file a motion in limine to preclude non- coconspirator hearsay evidence. It is well-established that an out-of-court declaration of a coconspirator is admissible against a defendant if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy, and (3) that the declaration was made during

the course and in furtherance of the conspiracy.  *See United States v. Lambros*, 564 F2d 26, 30 (8th Cir. 1977); *United States v Frol*, 518 F.2d 1134, 1136-37 (8th Cir. 1975); *see also*, Fed R. Evid. 801(d)(2)(E).

Siepker contends that none of the declarants whose out-of-court statements were admitted were coconspirators.  An out-of-court statement is not hearsay and is admissible if on the independent evidence, the district court is satisfied that it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties.  *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978).  The proponent must prove these requirements by a preponderance of the evidence.  *See Roach v. United States,* 164 F.3d 403, 409 (8th Cir. 1998) (citing *Bourjaily v. United States,* 483 U.S. 171, 175 (1987)).

During trial, counsel did object to testimony on the grounds that it was non-coconspirator hearsay, but was overruled.  As discussed above, in this case, there was compelling independent evidence that the witnesses and Siepker conspired to distribute methamphetamine.  The government unquestionably met its burden of demonstrating that the witnesses were co-conspirators and that their testimony was made during the course and in furtherance of their illegal association and was therefore not non-coconspirator hearsay.  Consequently, counsel's decision not to file a Motion in Limine did not affect any substantial rights of Siepker.

Although not raised in Siepker's Motion, it appears from the record that the *Bell* procedure may not have been precisely followed; however, this court does not find that this in any way prejudiced the defendant.  *See Bell*, 573 F.2d at 1043.  Explicit rulings on whether the government has ultimately met its burden of establishing the required foundation for the challenged statements ensure a clear record for review, but a district court is permitted some flexibility in the manner in which it makes its rulings.  *See Roach,*

at 409 (citing *Roulette,* 75 F.3d at 424-425). Further, the failure to make ultimate findings will only be reversible error if it substantially prejudices the rights of the parties. *Id.* (citing *Jorgensen,* 144 F.3d at 561-562). The overwhelming evidence of the existence of a conspiracy and the status of the witnesses as co-conspirators would have inevitably led to admission of the challenged statements, and, therefore, there was no prejudice to the defendant and counsel was not ineffective because failing to file a Motion in Limine was "reasonably objective." *See Wiggins*, 539 U.S. at 522.

### 5. *Failure to object to Count 3 as an illegal Bill Of Attainder*

Siepker claims that 18 U.S.C. § 3147, and particularly the additional consecutive 36 month sentence he received pursuant thereto, was an illegal Bill of Attainder, in violation of Article I, § 9, cl. 3 of the United States Constitution and that his counsel was ineffective for not objecting to the imposition of the additional 36 month consecutive sentence on these grounds. The statute in question provides that "A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to--(1) a term of imprisonment of not more than ten years if the offense is a felony; or (2) a term of imprisonment of not more than one year if the offense is a misdemeanor." A term of imprisonment imposed under this section "shall be consecutive to any other sentence of imprisonment." 18 U.S.C. § 3147.

Count 3 of the indictment alleged that Siepker possessed methamphetamine with the intent to distribute, having previously been convicted of a drug felony, while he was on pre-trial release under Count I of the indictment.

An unconstitutional bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of Gen. Servs.* 433 U.S.425, 468 (1977); *see also*, *Jensen v. Heckler*, 766 F.2d 383, 386 (8th Cir. 1985) ("In order to constitute a bill of

attainder, a statute must impose a punishment upon a designated person or class of persons without the benefit of trial." (citing *Nixon*, 433 U.S. at 468 (1977)); *United States v. Brown*, 381 U.S. 437, 445 (1965). "[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution." *United States v. Lovett,* 328 U.S. 303, 315, 66 S.Ct. 1073,1078- 1079, 90 L.Ed. 1252 (1946). To constitute a bill of attainder, the statute must (1) specify affected persons, (2) impose punishment, and (3) fail to provide for a judicial trial[.] *See Planned Parenthood of Mid-Missouri & Eastern Kansas, Inc.v. Dempsey,* 167 F.3d 458, 465 (8th Cir. 1999) ( citing *Selective Service System v. Minn. Public Interest Research Group*, 468 U.S. 841, 847(1984)).

18 U.S.C. § 3147 does not come into play until a defendant commits one of the crimes it covers; thus, it does not target either named individuals or easily ascertainable members of a group. Before the statute affects a person, that person must be found guilty of one of the listed crimes through the judicial process. Siepker's guilt was not pronounced by the statute, but was determined by a jury of his peers. Siepker was sentenced by a member of the judiciary, not the legislature, and Siepker was represented by counsel and was provided a full and fair opportunity to be heard regarding his violation of 18 U.S.C. § 3147. *See Nixon*, 433 U.S. at 386. Siepker's conviction and sentence pursuant to 18 U.S.C. § 3147 did not constitute an illegal Bill of Attainder and his counsel did not provide ineffective assistance of counsel by failing to raise this objection because it would have been reasonable for counsel to conclude that such an argument would not be successful. *See Wiggins*, 539 U.S. at 522.

Further, Siepker cannot demonstrate any prejudice by application of 18 U.S.C. § 3147. The issue of how to treat a consecutive sentence pursuant to 18 U.S.C. § 3147 was

discussed extensively by the court and counsel during Siepker's sentencing hearing. (Sentencing Tr. 45-52, 59-60). Ultimately the court deducted three levels from Count 1 before applying a 36 month consecutive sentence for Count 3, thereby reducing the sentence on Count 1 to 324 months, then adding 36 months for a total sentence of 360 months, the bottom of the guideline range, before adding 12 months for his behavior on pre-trial release, placing Siepker's final adjusted sentence of 372 months near the bottom of the guideline range for Count 1. (Sentencing Tr. 52). Siepker could realistically have received a sentence of 408 months. (Sentencing Tr. 60). Therefore, Siepker's claim of ineffective assistance of counsel for failing to object to application of 18 U.S.C. § 3147 as an illegal Bill of Attainder, also must fail because he cannot demonstrate any prejudice with regard to this claim.

### 6. *Failure to request a buyer-seller instruction*

Siepker claims that his trial counsel was ineffective for failing to file a Motion in Limine to preclude the government from admitting hearsay evidence from witnesses who were mere buyers/sellers and should have requested a buyer-seller jury instruction. Siekper claims that William Arnold, David Keough, Craig Grayson, Daryl Trytten, Brandi Burtis, Ron Chantrill, Dawn Busick, Brant Bast, Steven Huerta, David Hurst, Shane Godden and Mingo Flores were all mere buyers and sellers, but were not co-conspirators.

"A defendant is entitled to an instruction explaining his defense theory if the request is timely, the proffered instruction is supported by the evidence, and the instruction correctly states the law." *United States v. Adams*, 401 F.3d 886, 898 (8th Cir. 2005), quoting to *United States v. Hester*, 140 F.3d 753, 757 (8th Cir. 1998); s*ee also*, *United States v. Cabbell*, 35 F.3d 1255, 1259 (8th Cir. 1994). However, in the Eighth Circuit "a buyer-seller instruction 'does not apply to a defendant who received a large, distributable quantity of drugs.' *United States v. Adams,* 401 F.3d 866, *at* 898, citing

*United States v. Montano-Gudino*, 309 F.3d 501, 505-506 (8th Cir, 2002). Further, the buyer-seller instruction "is not appropriate when there is evidence of multiple drug transactions, as opposed to a single, isolated sale." *U.S. v. Jefferson*, 215 F.3d 820, 823 (8th Cir. 2000), citing to *United States v. Wiggins*, 104 F.3d 174, 177 (8th Cir. 1997). In *Prieshorn*, the Eighth Circuit Court of Appeals held that declining to give a proposed buyer-seller relationship instruction was reversible error where the evidence demonstrated that defendant had made only one purchase of drugs, knew only one of the alleged conspirators and did not order the drugs he purchased. *United States v. Prieshorn*, 658 F.2d 631, 637 (8th Cir. 1981). A buyer-seller instruction is not appropriate when there is evidence of multiple drug transactions, as opposed to a single isolated sale. *See*, *United States v. Figueroa*, 900 F.2d 1211, 1216-17 (8th Cir. 1990). Further, the receipt of large quantities of drugs is evidence of an intent to distribute rather than a single buy-sell relationship. *See*, *United States v. Turner*, 975 F.2d 490, 497-98 (8th Cir. 1992).

In this case, no reasonable juror could have believed that Siepker was involved in a mere buyer-seller relationship. The record is replete with evidence of multiple drug transactions and large quantities of drugs changing hands between Siepker and other witnesses, so that he was not entitled to a buyer-seller jury instruction. *See, United States v. Adams,* at 898. William Arnold also testified that he sold Siepker methamphetamine five or six times between 1999 and 2000, providing Siepker with quarter to half pounds of methamphetamine each time, with an approximate total of about two pounds. (Trial Tr. Vol. 1 80-81, 97). William Arnold testified that he believed that these were quantities for distribution, not personal use. (Trial Tr. Vol. 1, 82).

David Keogh testified that he sold Siepker methamphetamine between the spring of 1999 and the spring of 2000, stating that he started out selling Siepker about an ounce a week and ended up selling Siepker about an ounce three to four times a week. (Trial Tr.

Vol. 1, 133). David Keogh testified that a conservative estimate of the amount of methamphetamine he sold to Siepker was two-and-a half to three ounces a week for about a year. (Trial Tr. Vol. 1, 133). He testified that he believed this amount was consistent with someone who was reselling the drugs. (Trial Tr. Vol. 1, 134). Craig Grayson testified that during the winter of 2000, he had discussions with Siepker about supplying him with methamphetamine, and did sell him three fourths of a pound of methamphetamine for $10,000 in cash, following those discussions. (Trial Tr. Vol. 1, 166- 169).

Daryl Trytten testified that he sold Siepker two ounces of methamphetamine during the winter of 1998-1999. (Trial Tr. Vol.2, 24). Daryl Trytten understood that he would be paid for the drugs after Siepker redistributed them. (Trial Tr. Vol. 2, 23). Subsequent to the winter of 1998-1999, Trytten testified that he began to purchase methamphetamine from Siepker approximately two to three times a week, up until the time he was arrested in February of 2000. (Trial Tr. Vol. 2, 25). Trytten estimated that he purchased at least an ounce of methamphetamine a week from Siepker. (Trial Tr. Vol. 2, 28). He testified that he did not pay Siepker for the drugs immediately upon receipt, but would pay for them after he resold them or had received a paycheck. (Trial Tr. Vol. 2, 30-31). He testified that the amount of methamphetamine involved was more than you would expect someone to user personally. (Trial Tr. Vol. 2, 31). Trytten also testified that he purchased cocaine from Siepker during the summer of 1999 between ten to fifteen times. (Trial Tr. Vol. 2, 34). Trytten estimated that he purchased approximately four to six ounces of cocaine from Siepker on the same terms that he had purchased methamphetamine. (Trial Tr. Vol. 2, 34-35). Further, Trytten testified that he and Siepker met with an individual in Sioux City to make arrangements to buy large quantities of methamphetamine. (Trial Tr. Vol.2, 37). Trytten testified that the original arrangement was for Kenny to put up the money and they would split the profits "50-50". (Trial Tr. Vol. 2, 39). Between July and August of 1999,

Trytten testified that he and Siepker obtained approximately 10 pounds of methamphetamine and 4 pounds of cocaine from Sioux City for transportation and resale in the Mason City area. (Trial Tr. Vol. 2, 40-43).

In light of the overwhelming evidence of multiple drug transactions involving large quantities of drugs, Siepker's counsel was not ineffective for failing to request a buyer-seller instruction because it was reasonable for him to believe that it was not appropriate in this case. *See Wiggins,* 539 U.S. at 522.

### 7. *Failure to object to hearsay*

Siepker alleges that his counsel was ineffective for failing to object to hearsay evidence on the basis that it did not fall within the coconspirator hearsay exemption. Siepker is essentially re-casting his earlier arguments related to coconspirator testimony. A statement is not hearsay if the statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. *See Fed.R.Evid.*801(d)(2)(E). As discussed above, before statements are admissible pursuant to this rule, the Government must show that a conspiracy existed, that the declarant and the defendant were both members of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. *United States v. Roach,* 164 F.3d 403, 409 (8th Cir. 1998)(citing *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978); *see also United States v. Jorgensen,* 144 F.3d 550, 561-62 (8th Cir. 1998). As evaluated more fully above, the record contains overwhelming independent evidence of the existence of a conspiracy and of the involvement of the witnesses and Siepker in the conspiracy. Given the weight of all the evidence in the case, admission of the complained of testimony was properly admitted when objected to by Siepker's counsel and even if improperly admitted would have been no more than harmless error.

## 8. Stipulation that firearms were possessed "In Or Affecting Commerce"

Siepker also argues that his counsel was ineffective for failing to raise at trial and sentencing and on appeal the failure of the government to prove that his possession of the firearms in Count II was "in or affecting commerce," as required by 18 U.S.C. § 922(g)(1) and (3), and, instead, stipulating that the firearms in question were manufactured outside the state of Iowa and were transported across a state line at some time before the defendant received or possessed them and in also allowing the language of this stipulation to be used in Final Instruction No. 6. In essence, Siepker contends that his mere possession of the firearms did not "affect commerce."

The Eighth Circuit Court of Appeals recently reiterated its repeated rejection of this argument concerning "possession of a firearm" charges in *United States v. Perry*, ___ F.3d ___, 2008 WL 4964278 (8th Cir. Nov. 24, 2008):

> Perry argues his possession of the firearm in Minnesota alone was insufficient to satisfy the constitutionally required nexus between his possession and interstate commerce. This argument fails, however, because Perry stipulated the firearm was manufactured outside the state of Minnesota and was transported across state lines prior to his possession of it. We have repeatedly held this is sufficient to satisfy § 922(g). *United States v. Sianis*, 275 F.3d 731, 734 (8th Cir. 2002).

*Perry*, ___ F.3d at ___, 2008 WL 4964278 at *4. The *Sianis* decision, on which *Perry* relies, was handed down in January 2002, before Siepker went to trial in July 2002. In *Sianis*, the court rejected an argument even more similar to the one that Siepker makes here:

> Sianis asserts that he did not move the firearm through interstate commerce. Section 922(g) makes it a crime for convicted felons "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has

32

been shipped or transported in interstate or foreign commerce."
18 U.S.C. § 922(g). Sianis's involvement in how the firearm
came into Nebraska is irrelevant to our inquiry. Sianis admits
that the firearm at issue was manufactured outside of Nebraska.
His admission is enough to satisfy § 922(g). *See United States
v. Carter,* 270 F.3d 731, 734-35 (8th Cir. 2001) ("To satisfy
the interstate commerce element of § 922(g), it is sufficient that
there exists 'the minimal nexus that the firearm have been, at
some time, in interstate commerce.'" (quoting *Scarborough v.
United States,* 431 U.S. 563, 575, 97 S. Ct. 1963, 52 L. Ed. 2d
582 (1977))).

*Sianis,* 275 F.3d at 734. Thus, Siepker's possession in one state (Iowa), of firearms that had been manufactured in another state was sufficient to establish the "affecting interstate commerce" requirement of § 922(g).

Nor did Siepker's counsel provide "ineffective assistance" in allowing Siepker to stipulate to this element of the firearm offense, rather than putting the prosecution to its proof that the firearms had, in fact, been manufactured in a state other than the one in which Siepker possessed them. It was reasonable trial strategy for counsel to focus Siepker's defense to this charge on his "possession" of the firearms, rather than on whether the firearms had been transported in interstate commerce at some time prior to Siepker's possession of them, particularly where the evidence suggested that Siepker's possession of the firearms was, if anything, "constructive" rather than "actual." *Cf. Lemon v. United States*, 335 F.3d 1095, 1096 (8th Cir. 2003) (finding that it was reasonable trial strategy for counsel to stipulate to the drug type, which would be readily proved by a laboratory report, and instead to focus trial strategy on the defendant's possession of the drugs). "'[S]trategic choices [of counsel] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Quite simply, Siepker has not shown that, by

stipulating to the "affecting commerce" element of the firearms offense, counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 522. In the absence of a showing of deficient performance, the court need proceed no further in its analysis of this "ineffective assistance" claim, *Walker*, 324 F.3d at 1040, and Siepker's § 2255 motion fails on this claim.

### 9. *Failure to object to a constructive amendment*

Although not delineated as a separate ground for his Motion, Siepker asserts that his trial counsel was ineffective for failing to object to Final Jury Instruction No.6 as a constructive amendment of the indictment. Siepker alleges that this constructive amendment allowed the jury to convict him of transporting a firearm when he was not charged with a "transportation" offense, but a 'possession" offense. "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner…that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in this indictment." *United States v. Wright*, 540 F.3d 833, 841(8th Cir. 2008) (citing *United States v. Whirlwind Soldier*, 499 F.3d 868, 870 (8th cir. 2007)); *see United States v. Howard*, 540 F.3d 905, 908 (8th Cir. 2008). Siepker was indicted in Count 2 as being a felon in possession of a firearm and being an unlawful user of controlled substances in possession of a firearm, all in violation of 18 U.S.C. § 922(g). To convict Siepker as a felon in possession of a firearm, or as a controlled substance abuser in possession of a firearm, the Government was required to "prove beyond a reasonable doubt (1) a previous conviction for a crime punishable by imprisonment over one year, and (2) knowing possession of a firearm (3) that was in or affected interstate commerce. *See United States v. McPike,* 512 F.3d 1052, 1055 (8th Cir. 2008)(citing to *United States v. Smart,* 501 F.3d 862, 865 (8th Cir. 2007)).

To establish the requisite interstate nexus for a § 922(g) crime, the Government must only show a "minimal nexus that the firearms have been, at some time, in interstate commerce." *United States v. Bates,* 77 F.3d 1101, 1104 (8th Cir. 1996). Accordingly, the language of the jury instruction explaining the parties' stipulation regarding interstate transportation of the firearm established the required "interstate commerce" element of the charged "possession" offense. *See United States v. McPike*, 512 F.3d at 1055. The jury instruction did not alter any essential element of the charge. *See United States v. Wright,* 540 F.3d 841. Siepker's constructive amendment argument fails, as the indictment and jury instructions are identical in all relevant respects. Siepker's counsel was not ineffective for failing to object to Final Jury Instruction No. 6 and he suffered no prejudice from the complained of jury instruction.

### *10.    Failure to assert an* **Apprendi** *claim*

Siepker also contends that his counsel was ineffective for failing to raise an objection, based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the district court's finding of drug quantity, beyond what he argues was reflected in the jury's verdict, which resulted in his sentence to 372 months imprisonment, well in excess of the maximum sentence that he contends was permissible on the jury's findings alone. Somewhat more specifically, Siepker points out that the jury found him guilty of an offense involving "500 grams or more of a mixture and substance containing a detectable amount of methamphetamine," which should only have resulted in a base offense level of 32, which, with his criminal history category of IV, would have resulted in a guidelines sentencing range of 168 to 210 months of imprisonment. Siepker argues that the district court violated *Apprendi* by finding his total drug quantity to be 14.815 kilograms of methamphetamine mixture, which made his base offense level 36 for Counts 1 and 3 of the indictment, and

after certain adjustments, imposing a guidelines sentence of 372 months, which Siepker contends is almost double the permissible sentence.

On July 11, 2002, a few months before Siepker was sentenced in October 2002, the Eighth Circuit Court of Appeals held that "*Apprendi* does not forbid a district court from finding the existence of sentencing factors, including drug quantity, by a preponderance of the evidence." *United States v. Diaz*, 296 F.3d 680, 683 (8th Cir.), *cert. denied*, 537 U.S. 940 (2002). Thus, under controlling law at the time that Siepker was sentenced, his counsel's failure to raise an "*Apprendi* issue" based on the court's determination of the methamphetamine involved in his offense conformed to controlling law. That being so, counsel's performance was not "deficient," and in the absence of a showing of deficient performance, the court need proceed no further in its analysis of this "ineffective assistance" claim, *Walker*, 324 F.3d at 1040, and Siepker's § 2255 motion fails on this claim of "ineffective assistance of counsel."

Nor can Siepker claim that he was wrongfully denied the benefit of *Apprendi*, as subsequently interpreted in the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). *Blakely* and *Booker* held that, at least under a mandatory guidelines system,[1] the sentencing judge may not impose guidelines sentencing increases based on determinations of facts that were not found by a jury beyond a reasonable doubt nor admitted by the defendant. However, *Blakely* and *Booker* were handed down after Siepker was sentenced and after his petition for writ of certiorari was denied in April 2004. Every federal court of appeals, including the Eighth Circuit Court of Appeals, to consider the issue has held that *Booker* and/or *Blakely* do not apply retroactively to cases on collateral review. *See Lefkowitz v. United States*, 446 F.3d

---

[1] At the time that Siepker was sentenced, the guidelines were mandatory.

788, 791 (8th Cir. 2006) (*Booker*); *United States v. Hernandez*, 436 F.3d 851, 855 (8th Cir.) (*Blakely* and *Booker*), *cert. denied*, 126 S. Ct. 2341 (2006); *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005) (*per curiam*) (*Blakely* and *Booker*); *see also In re Zambrano*, 433 F.3d 886, 889 (D.C. Cir. 2006) (*Booker*); *United States v. Gentry*, 432 F.3d 600, 606 (5th Cir. 2005) (*Booker*); *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005) (*Booker*), *cert. denied*, 127 S. Ct. 121 (2006); *Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir. 2005) (*Blakely*); *United States v. Bellamy*, 411 F.3d 1182, 1188 (10th Cir. 2005) (*Booker*); *In re Elwood*, 408 F.3d 211, 212 (5th Cir. 2005) (*Booker*); *Lloyd v. United States*, 407 F.3d 608, 615-16 (3rd Cir. 2005) (*Blakely* and *Booker*); *Guzman v. United States*, 404 F.3d 139, 143-44 (2d Cir. 2005) (*Booker*); *In re Olopade*, 403 F.3d 159, 164 (3rd Cir. 2005) (*Booker*); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005) (*Blakely* and *Booker*); *United States v. Price*, 400 F.3d 844, 845 (10th Cir. 2005) (*Blakely* and *Booker*); *Bey v. United States*, 399 F.3d 1266, 1269 (10th Cir. 2005) (*Booker*); *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005) (*Booker*); *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005) (*Blakely* and *Booker*); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) (*Booker*); *In re Anderson*, 396 F.3d 1336, 1339-40 (11th Cir. 2005) (*Blakely* and *Booker*).  Because this case was not pending on direct review when either *Blakely* or *Booker* was decided, the holdings in *Blakely* and *Booker* are unavailable as the bases to attack Siepker's sentence here.  Moreover, the court finds that Siepker's trial counsel's performance was not "deficient" for failing to predict, almost two years before *Blakely* was decided, that *Apprendi* could be interpreted to bar increases in guidelines sentences based on a trial judge's finding of facts by the preponderance of the evidence, where then-controlling law had rejected that interpretation.

Because Siepker cannot "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,'"

he cannot satisfy the "deficient performance" prong of the *Strickland* analysis of his "ineffective assistance" claim based on *Apprendi*. *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 687). Quite simply, Siepker has not shown that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 522. In the absence of a showing of deficient performance, the court need proceed no further in its analysis of this "ineffective assistance" claim, *Walker*, 324 F.3d at 1040, and his § 2255 motion fails on this claim.

Even to the extent that Siepker makes a "pure" *Apprendi* claim that his sentence violated constitutional standards, without regard to ineffective assistance of counsel, and even had the claim not been procedurally defaulted, it is without merit. At the time Siepker was sentenced, the Eighth Circuit Court of Appeals had repeatedly held that, where the indictment charges and the jury has found a particular range of quantity for the drugs involved in the offense, it was still "proper for the sentencing judge to then make more exact calculations for purposes of computing the offense level under the guidelines and determining where the sentence will actually fall within the statutory range determined by the jury's verdict." *United States v. Hollingsworth*, 257 F.3d 871, 878 (8th Cir. 2001), *cert. denied*, 534 U.S. 1100 (2002), *overruled on other grounds, United States v. Diaz*, 296 F.3d 680 (8th Cir. 2002) (*en ban*c), *cert. denied*, 537 U.S. 940 (2002); *accord Diaz*, 296 F.3d at 683 ("*Apprendi* does not forbid a district court from finding the existence of sentencing factors, including drug quantity, by a preponderance of the evidence."). Here, the indictment charged Siepker with conspiracy to distribute 500 grams *or more* of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A). The jury, likewise, found him guilty of a conspiracy to distribute 500 grams *or more* of a mixture or substance containing a detectable amount of methamphetamine. The jury's determination established Siepker's

maximum statutory sentence as life imprisonment. 21 U.S.C. § 841(b)(1)(A). Thus, the court's findings on drug quantity, that the offense involved 14.815 kilograms of a methamphetamine mixture, which resulted in a sentence of 372 months, did not exceed the statutory range based solely on the jury's findings. *Hollingsworth*, 257 F.3d at 878. Although *Booker* in part relied on *Apprendi* to hold that jury findings must also be the basis for determination of the maximum *guidelines* sentencing range, under mandatory guidelines, *Booker* is not retroactively applicable to final convictions on collateral review. *Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (8th Cir. 2005) (*per curiam*). Therefore, Siepker's "pure" *Apprendi* claim also fails.

## E. Constitutional Issues

### 1. Admission of hearsay in violation of the Sixth Amendment

Siepker's Ground VIII is that inadmissible and untested hearsay was admitted at trial in violation of his Sixth Amendment right to confrontation, as those rights are explained in *Crawford v. Washington*, 541 U.S. 36 (2004), and that his counsel was ineffective in failing to raise this claim at trial or on appeal. Siepker identifies the hearsay that he alleges was admitted in violation of his confrontation rights, as those rights are explained in *Crawford v. Washington*, 541 U.S. 36 (2004), as testimony by Craig Grayson concerning a conversation with Dave Van Austin; testimony of Brent Bast concerning a conversation and alleged drug transaction between Siepker and Bill Hippen; and testimony by law enforcement officers Mike McKelvey and Matthew Klunder concerning laboratory reports issued by a non-testifying laboratory analyst. Siepker argues that the prosecution could have called Dave Van Austin, Bill Hippen, and the laboratory analyst, but did not do so to prevent Siepker from cross-examining them.

The prosecution responds that the confrontation rights at issue in *Crawford* only extend to "testimonial" hearsay, which does not include, *inter alia*, statements from co-conspirators and business records. The prosecution argues that Grayson's testimony referred to a casual statement by Van Austin and, as such, the alleged hearsay statement was not "testimonial," and the statement was properly admitted as co-conspirator hearsay. Similarly, the prosecution argues that Bast's testimony related to his personal, eye-witness accounts of transactions that he observed between Hippen and Siepker, not to statements by a non-testifying person. The prosecution also argues that the lab reports did not violate the confrontation clause, because the lab reports were business records under Federal Rules of Evidence 803(6) that were properly self-authenticated by an attached affidavit in compliance with Rule 902(11). Thus, not only does the prosecution argue that there was no Sixth Amendment confrontation clause violation, but that there was no "ineffective assistance" of counsel in failing to raise meritless confrontation clause claims.

In a *pro se* reply, Siepker argues that, under *Giles v. California*, 128 S. Ct. 2678 (2008), the only unconfronted testimonial statements that are admissible are declarations made by a speaker who was both on the brink of death and aware that he was dying and statements of a speaker who was detained or kept away by means of the defendant's procurement (*i.e.*, forfeiture by wrongdoing). He contends that neither of these exceptions apply in this case. He also argues that the sole purpose of offering the testimony was "testimonial," because it was the prosecution's intent to introduce the evidence to assist it in obtaining a conviction, and if the prosecution had not thought the evidence was important, the prosecution would not have used it. Therefore, he contends that the prosecution has no explanation for stripping him of his confrontation rights by offering the hearsay in question without affording him the opportunity to cross-examine the declarants.

The critical question here, as in most cases in which a party asserts a violation of *Crawford* and Sixth Amendment confrontation clause rights by the admission of hearsay, is whether the hearsay in question was "testimonial." *See United States v. Reyes,* 362 F.3d 536, 541 n.4 (8th Cir. 2004) ("*Crawford* did not provide additional protection for nontestimonial statements, and indeed, questions whether the Confrontation Clause protects nontestimonial statements at all. [*Crawford*, 541 U.S. at 68, 124 S. Ct. 1354]."), *cert. denied sub nom. Burton v. United States,* 542 U.S. 945, 124 S. Ct. 2926, 159 L. Ed. 2d 826 (2004). The Supreme Court held in *Crawford v. Washington,* 541 U.S. 36 (2004), that "[w]here *testimonial* evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford,* 541 U.S. at 68, 124 S. Ct. 1354 (emphasis added). Unfortunately, the Court in *Crawford* left for another day precisely the question that may be key here: a comprehensive definition of "testimonial." *Id.* ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'") & n.10 (acknowledging that "our refusal to articulate a comprehensive definition in this case will cause interim uncertainty," but reasoning that such uncertainty could "hardly be any worse than the status quo"). "[T]o the extent that the Confrontation Clause was concerned with out-of-court statements, the Court [in *Crawford*] recognized that the nature of 'testimonial' hearsay was that it was in the nature of a formal statement against the accused, with the expectation that the statement would be used against the accused at trial, rather than a casual remark to an acquaintance." *United States v. Johnson*, 403 F. Supp. 2d 721, 818 (N.D. Iowa 2005) (summarizing *Crawford*, 541 U.S. at 51-53). Although "statements made by a witness in an interrogation by law enforcement officers clearly fall within this definition," a "'casual' remark to an acquaintance," without "the merest hint of an expectation that the statement would be used against [the defendant] or anyone else at trial," is not "testimonial hearsay," and

*Crawford* does not apply. *Id.* Moreover, the Supreme Court also appeared to recognize in *Crawford* that "statements in furtherance of a conspiracy" are "not testimonial." *See Crawford*, 541 U.S. at 56 ("But there is scant evidence that exceptions [to the hearsay rule] were invoked to admit *testimonial* statements against the accused in a *criminal* case. Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy. We do not infer from these that the Framers thought exceptions would apply even to prior testimony.") (emphasis in the original). The Eighth Circuit Court of Appeals has subsequently confirmed that understanding. *Reyes*, 362 F.3d at 541 n.4 ("[Under *Crawford*] co-conspirator statements are non-testimonial. [*Crawford*, 541 U.S. at 56, 124 S.Ct. 1354.]"). Thus, if the government established that the hearsay statements in question were made in furtherance of a conspiracy in which the defendant was also a member, then those statements were "non-testimonial," and *Crawford* does not apply. *Johnson*, 403 F. Supp. 2d at 819.

Here, the statements attributed to Van Austin in Grayson's testimony are "non-testimonial". They are, as the prosecution argues, "'casual' remark[s] to an acquaintance," without "the merest hint of an expectation that the statement would be used against [Siepker] or anyone else at trial," so *Crawford* does not apply. *See id.*; *see also* Trial Transcript, Vol. 1, p. 180-181. Moreover, they are "statements in furtherance of a conspiracy," and, as such, are "not testimonial." *See Crawford*, 541 U.S. at 56; *Reyes*, 362 F.3d at 541 n.4; *Johnson*, 403 F. Supp. 2d at 819. Bast's testimony did not consist of hearsay at all, and thus raised no Confrontation Clause issue, because it consisted of his personal, eye-witness observations of a transaction between Siepker and Hippen, not statements that he attributed to Hippen. *See* Trial Transcript, Vol. 2, pp. 196-198. To the extent that his testimony *did* recount statements by Hippen, those statements were also

"statements in furtherance of a conspiracy," and, as such, are "not testimonial." *See Crawford*, 541 U.S. at 56; *Reyes*, 362 F.3d at 541 n.4; *Johnson*, 403 F. Supp. 2d at 819. Nothing in *Crawford* suggests that a statement that was "non-testimonial" when made is somehow converted into a "testimonial" statement when it is used in a subsequent trial against a defendant, as Siepker seems to argue. Thus, admission of the testimony of these witnesses did not violate Siepker's Sixth Amendment confrontation clause rights, and his § 2255 claim to the contrary fails.

The law enforcement officers' testimony about the lab reports also does not raise a Sixth Amendment confrontation clause issue, because the lab reports were admissible "business records," not "testimonial" hearsay. *See Crawford*, 541 U.S. at 56 (noting that "business records," by their nature, are not "testimonial"); *United States v. Redd*, 318 F.3d 778, 784 (8th Cir. 2003) (laboratory reports are admissible pursuant to Rule 803(6), because "laboratory reports 'bear substantial indicia of reliability. They are the regular reports of a company whose business it is to conduct such tests, and which expects its clients to act on the basis of its reports.'" (quoting *United States v. Bell*, 785 F.2d 640, 643 (8th Cir. 1986)); *United States v. Baker,* 855 F.2d 1353, 1359 (8th Cir. 1988) ("When made on a routine basis, laboratory analyses of controlled substances are admissible as business records under Federal Rule of Evidence 803(6)," which the court recognized as a "firmly rooted" hearsay exception that does not raise confrontation clause issues). It is true that such records are only admissible if properly authenticated, and also true that law enforcement officers with no personal knowledge of how the reports were prepared or maintained cannot provide the necessary authentication or foundation. *See United States v. Riley*, 236 F.3d 982, 984-85 (8th Cir. 2001). Laboratory reports may, nevertheless, be admitted without the testimony of the person who actually prepared the report, even if that person is not shown to be unavailable. *See United States v. Roulette*, 75 F.3d 418, 422 (8th

Cir. 1996). Here, the prosecution argues that the lab reports were properly "self-authenticated" by the attached written declaration of a qualified person, as permitted by Rule 902(11), and the court agrees. *See* FED. R. EVID. 902(11) ("The original or duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6)" is admissible without extrinsic evidence of authenticity, "if accompanied by a written declaration of its custodian or other qualified person . . . certifying that" the record was made at or near the time of the matters set forth in the record, was kept in the course of regularly conducted activity, and was made by the regularly conducted activity as a regular practice); *see also* Trial Transcript, Vol. 3, p. 472. Therefore, admission of the lab reports and the law enforcement officers' testimony about their contents did not violate Siepker's Sixth Amendment confrontation clause rights, and his § 2255 claim to the contrary fails.

Nor was Siepker's counsel's performance "deficient" in failing to assert a Sixth Amendment confrontation clause challenge to this evidence. *Rice*, 449 F.3d at 897 (the party claiming "ineffective assistance of counsel" must "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,'" or he cannot satisfy the "deficient performance" prong of the *Strickland* analysis) (quoting *Strickland*, 466 U.S. at 687). Quite simply, Siepker has not shown that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 522. First, Siepker's trial counsel did object to the admission of Grayson's testimony about Van Austin's comments. Second, there either was no hearsay in Bast's testimony to which counsel could or should have objected, because Bast's testimony did not recount statements by Hippen, or because Hippen's statements were co-conspirator hearsay in furtherance of the conspiracy. Finally, the laboratory reports also were not subject to a hearsay objection, because they were self-authenticated business

records, so that no objection by counsel could or should have been made. Thus, in the absence of a showing of deficient performance, the court need proceed no further in its analysis of this "ineffective assistance" claim, *Walker*, 324 F.3d at 1040, and Siepker's § 2255 motion fails on this claim.

### 2. Insufficient evidence

As a final ground for § 2255 relief, Siepker's counsel refashions or consolidates Siepker's various challenges to his conviction on the drug conspiracy count into a Fourteenth Amendment "fair trial" challenge based on what Siepker contends was "insufficient evidence" of an illegal agreement. More specifically, counsel argues that the prosecution's evidence showed only buyer-seller relationships between Siepker and the numerous witnesses called by the prosecution and, in some cases, direct denials by those witnesses of any agreement regarding drug sales. Siepker's counsel argues that there was simply no evidence that Siepker was intentionally involved in a larger scheme to distribute methamphetamine and that his mere association with others involved in drug transactions or knowledge of such drug transactions is not enough to prove his membership in a conspiracy. Because Siepker contends that the jury convicted him even though there was insufficient evidence of an illegal agreement, he contends that his Fourteenth Amendment right to a fair trial was violated.

The prosecution, of course, disagrees. The prosecution points out that there is no requirement to prove an express agreement; a tacit or implicit agreement will suffice. Here, the prosecution argues that it produced sufficient evidence of a tacit or implicit agreement to distribute methamphetamine from evidence that Siepker engaged in repeated, ongoing transactions with various individuals and evidence of financial arrangements between Siepker and his suppliers, whereby the suppliers "fronted" Siepker the drugs, on the understanding that he would pay for the drugs by selling them himself. The prosecution

also points to evidence that others cooperated with Siepker in his drug distribution scheme, including evidence that Huerta and Flores helped to collect drug debts and to intimidate debtors on Siepker's behalf, and evidence that Mick Lowe made trips to Sioux City to bring back drugs for Siepker and Trytten. The prosecution also points to evidence that Siepker sold quantities of methamphetamine consistent with further distribution and also "fronted" drugs to some of his buyers, with the expectation that they would resell the drugs to get money to pay him. Finally, the prosecution points to evidence that Siepker cooperated with others to work together to sell drugs, including evidence from Trytten that he and Siepker explicitly agreed to purchase drugs from Trytten's source in Sioux City, then sell them in Mason City and split the proceeds; evidence that Grayson met Siepker, at Siepker's request, which led to Grayson's agreement to start selling methamphetamine to Siepker either directly or through one of Grayson's customers, Isch; evidence from Bast that he helped Siepker distribute methamphetamine to a person in payment for a motor home; and evidence from Huerta that he and Flores agreed to collect drug debts for Siepker.

As the Eighth Circuit Court of Appeals recently explained, in a case involving an alleged conspiracy to distribute methamphetamine,

> "To prove conspiracy, the Government must show an agreement to achieve an illegal purpose, the defendant's knowledge of the agreement, and the defendant's knowing participation in the conspiracy." *[United States v.] Castro-Gaxiola,* 479 F.3d [579,] 581 [(8th Cir. 2007)]. A "[t]acit understanding—as opposed to mere presence at and knowledge of an intended drug sale—will suffice; a formal agreement is unnecessary." *United States v. Espino,* 317 F.3d 788, 792 (8th Cir. 2003). The government may use either direct or circumstantial evidence, but often "evidence in a conspiracy case will be circumstantial due to an illegal conspiracy's 'necessary aspect of secrecy.'" *United States v. Tensley,* 334

F.3d 790, 794 (8th Cir. 2003), *quoting United States v. Robinson,* 217 F.3d 560, 564 (8th Cir. 2000).

*United States v. Hogan*, 539 F.3d 916, 924-25 (8th Cir. 2008); *see also United States v. Smith*, 487 F.3d 618, 620 (8th Cir. 2007) ("The agreement does not have to be a formal, explicit agreement; a tacit understanding will suffice."); *United States v. May*, 476 F.3d 638, 641 (8th Cir. 2007) ("The agreement may be a tacit understanding rather than a formal, explicit agreement.").

Although the defendant in *Hogan* asserted that the prosecution failed to prove an agreement and, instead, proved only that he possessed methamphetamine twice and sold it once, the court disagreed, finding that the defendant admitted "fronting" methamphetamine to other dealers, expecting payment only when they resold the drugs; that the evidence showed that the defendant frequently traveled to California to transport methamphetamine to Missouri; that the defendant produced a chart outlining the pattern of distribution of methamphetamine from his source in California through himself to four other dealers; and that the defendant sent a UPS package with methamphetamine in it to Missouri. *Id.* at 925. Similarly, in *Smith*, the court held that there was sufficient evidence to refute the defendant's contention that the evidence was not sufficient to prove an agreement to distribute methamphetamine, only an association between himself and another distributor, Christinson, consisting of the following: "(1) Smith was receiving almost half of the methamphetamine that Christinson received from Contreras, (2) Smith offered to 'take care of' the person who may have stolen one of the shipments, and (3) Smith was selling methamphetamine to Braaksma and had directed Braaksma to deliver methamphetamine to another person." *Smith*, 487 F.3d at 621. Also, in *May*, the court rejected the defendant's contention that there was no agreement to distribute crack cocaine, and that the evidence

showed only a buyer-seller relationship, where there was evidence that the defendant bought and resold drugs numerous times. *May*, 476 F.3d at 641.

It is readily apparent from these authorities that there was more than sufficient evidence for a reasonable jury to find that Siepker had at least a tacit or implicit agreement with others to distribute methamphetamine. The court held, above, that there was sufficient evidence that Siepker was involved in more than buyer-seller relationships with others, so that he was not entitled to a buyer-seller instruction. Moreover, as the prosecution here contends, there was evidence that others "fronted" drugs to Siepker and that he "fronted" drugs to others, *see Hogan*, 539 F.3d at 925; evidence that Siepker engaged in numerous purchases and sales of drugs and purchased drugs for resale, *see May*, 476 F.3d at 641; evidence that Siepker sought to enforce drug debts, *see Smith*, 487 F.3d at 621; and evidence that Siepker agreed with others or directed others to engage in conduct to further the drug distribution scheme. *See id.* Therefore, this last claim for § 2255 relief also fails.

### F.  Certificate of Appealability

Denial of Siepker's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for his claims therein. Whether or not a certificate of appealability should issue is controlled by 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
> * * *
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b). To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of

the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court finds that Siepker has not made a substantial showing of the denial of a constitutional right on his § 2255 claims. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find this court's assessment of Siepker's claims debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Siepker does not make the requisite showing to satisfy § 2253(c) on his claim for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).

### III. CONCLUSION

Upon the foregoing, defendant Siepker's *pro se* Motion Under 28 U.S.C. § 2255 (docket no. 116) is **denied in its entirety**. No certificate of appealability will issue for any claim or contention in this case.

IT IS SO ORDERED.

DATED **this 18th day of December, 2008.**

**MARK W. BENNETT**
**U. S. DISTRICT COURT JUDGE**
**NORTHERN DISTRICT OF IOWA**